# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARK PHILLIPS, | ) | CV. NO.  10-00272 DAE-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BAC HOME LOANS SERVICING, | ) | |
| LP, FKA COUNTRYWIDE HOME | ) | |
| LOANS SERVICING, LP; | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC.; | ) | |
| and DOES 1 through 20 inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### ORDER: (1) GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; (2) DISMISSING COMPLAINT WITHOUT PREJUDICE AS <u>AGAINST ALL DEFENDANTS</u>

On June 30, 2011, the Court heard Defendants' Motion to Dismiss.

James H. Fosbinder, Esq., appeared at the hearing on behalf of Plaintiff Mark

Phillips ("Plaintiff"); Patricia J. McHenry, Esq., and Sean Michael Smith, Esq.,

appeared at the hearing on behalf of Defendants BAC Home Loans Servicing, LP

("BAC") and Mortgage Electronic Registration Systems, Inc. ("MERS")

(collectively, "Defendants").  After reviewing the motion and the supporting and

opposing memoranda, the Court GRANTS IN PART and DENIES IN PART the

Motion to Dismiss.  (Doc. # 28.)  The First Amended Complaint is DISMISSED

WITHOUT PREJUDICE as against all Defendants.

BACKGROUND

On or about September 29, 2006, Plaintiff Mark Phillips ("Plaintiff")

executed a promissory note in favor of First Magnus Financial Corporation ("First

Magnus") in the amount of $240,000.[1]  (MTD Ex. 3 at 2.)  To secure payment on

the promissory note, Plaintiff executed a mortgage encumbering real property

located at 140 Uwapo Road # 40-202, Kihei, Hawaii, 96753 (the "Subject

Property") in favor of First Magnus.  (Id. at 2–3.)  The mortgage was recorded in

the State of Hawaii Bureau of Conveyances on October 16, 2006 as Document

Number 2006-188427.  (Id. at 1.)  First Magnus is listed on the mortgage as the

originating lender and Mortgage Electronic Registration Systems, Inc. ("MERS")

---

[1] Defendants submitted a copy of the subject mortgage as Exhibit 3 to their Motion to Dismiss.  "[A] district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  Parrino v. FHP, Inc., 146 F.3d 699, 705 (9th Cir. 1998) (quoting Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)); see also Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001).  In the instant case, Plaintiff's entire Complaint revolves around the subject mortgage.  The mortgage is clearly essential to the complaint, and neither party disputes its authenticity.  Accordingly, it is appropriate for the Court to consider the mortgage itself when ruling on the Motion to Dismiss.

is the mortgagee "acting solely as a nominee for Lender and Lender's successors and assigns."  (Id. at 2.)

Plaintiff claims that on or about October 23, 2006, First Magnus sold Plaintiff's loan to Countrywide Home Loans, Inc.  (FAC ¶ 48.)  Thereafter, BAC Home Loans Servicing, LP ("BAC") allegedly serviced Plaintiff's loan.

On August 4, 2009, MERS executed an assignment, which purported to assign its interest in the mortgage to BAC.  (FAC Ex. A.)  This assignment was recorded in the State of Hawaii Bureau of Conveyances on September 11, 2009 as Document Number 2009-139370.  (Id.)  BAC recorded a  Notice of Mortgagee's Intention to Foreclose Under the Power of Sale ("Foreclosure Notice") on the same day.[2]  (MTD Ex. 4.)  As recognized by this Court's December 13, 2010 Order, the Subject Property was sold at a foreclosure auction on June 10, 2010.  (Order at 3–4.)  Public records indicate that Federal National Mortgage Association now owns the Subject Property.  (Id. at 4.)

On May 7, 2010, Plaintiff filed a Complaint in this Court against Defendants BAC and MERS (collectively, "Defendants"), alleging that Plaintiff

---

[2] Defendants submitted a copy of the Foreclosure Notice as Exhibit 4 to their Motion to Dismiss.  Because Plaintiff's Complaint challenges the validity of the foreclosure, the Foreclosure Notice is clearly essential to the Complaint, and neither party disputes its authenticity.  Accordingly, it is appropriate for the Court to consider the Foreclosure Notice when ruling on the Motion to Dismiss.

had been lured into a predatory mortgage loan.  (Doc # 1.)  On September 8, 2010, Defendants filed a Motion to Dismiss (Doc. # 8), which the Court granted on December 13, 2010 (Doc. # 22).  The Court dismissed with prejudice Plaintiff's TILA rescission and recoupment claims, dismissed without prejudice Plaintiff's remaining claims, and granted Plaintiff 30 days leave to file an amended complaint.  (<u>Id.</u>)

On January 10, 2011, Plaintiff filed a First Amended Complaint ("FAC," Doc. # 23), which asserts the following claims:

- <u>Count I</u>: Violations of the Sherman Antitrust Act (FAC ¶¶ 72–79)

- <u>Count II</u>: Violations of the Hawaii Antitrust/Anti-Monopoly Acts (<u>Id.</u> ¶¶ 80–83)

- <u>Count III</u>: Civil Conspiracy (<u>Id.</u> ¶¶ 84–88)

- <u>Count IV</u>: Fraudulent Misrepresentation (<u>Id.</u> ¶¶ 89–96)

- <u>Count V</u>: Unfair and Deceptive Acts or Practices (<u>Id.</u> ¶¶ 97–109)

- <u>Count VI</u>: Breach of Fiduciary Duty (<u>Id.</u> ¶¶ 110–118)

- <u>Count VII</u>: Unjust Enrichment against Defendant BAC (<u>Id.</u> ¶¶ 119–124)

- <u>Count VIII</u>: Mistake against Defendant BAC (<u>Id.</u> ¶¶ 125–126)

- Count IX:    Unconscionability against Defendant BAC (<u>Id.</u> ¶¶ 127–135)

- Count X:    Intentional Infliction of Emotional Distress (<u>Id.</u> ¶¶ 136–140)

- Count XI:    Violations of the Fair Debt Collection Practices Act against Defendant BAC (<u>Id.</u> ¶¶ 141–146)

- Count XII:    Breach of the Covenant of Good Faith and Fair Dealing (<u>Id.</u> ¶¶ 147–149)

- Count XIII:    Complaint to Quiet Title (<u>Id.</u> ¶¶ 150–155)

On February 7, 2011, Defendants filed a Motion to Dismiss the First Amended Complaint ("Motion to Dismiss"). ("MTD," Doc. # 28.) Plaintiff filed an Opposition to the Motion to Dismiss on April 29, 2011. ("Opp'n," Doc. # 33.) Defendants filed a Reply on May 18, 2011. ("Reply," Doc. # 35.)

<u>STANDARD OF REVIEW</u>

I.    <u>Federal Rule of Civil Procedure 12(b)(6)</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Review is limited to the contents of the complaint. <u>See</u> <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754 (9th Cir.

1994).  A complaint may be dismissed as a matter of law for one of two reasons:

"(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable

legal claim."  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir.

1984) (citation omitted).  Allegations of fact in the complaint must be taken as true

and construed in the light most favorable to the plaintiff.  See Livid Holdings Ltd.

v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6)

motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In providing grounds for relief, however, a plaintiff must do more than recite the

formulaic elements of a cause of action.  See id. at 556–57; see also McGlinchy v.

Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations

without more are insufficient to defeat a motion to dismiss for failure to state a

claim.") (citation omitted).  "The tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions," and

courts "are not bound to accept as true a legal conclusion couched as a factual

allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations

and citations omitted).  Thus, "bare assertions amounting to nothing more than a

formulaic recitation of the elements" of a claim "are not entitled to an assumption

of truth."  Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he

6

non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.  See Twombly, 550 U.S. at 570.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief.  Id. at 586. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. at 558 (citation omitted).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

II.     Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Under Ninth Circuit law, "Rule 9(b) requires particularized allegations of the circumstances constituting fraud."  In re

GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc),

superseded on other grounds by 15 U.S.C. § 78u-4.

In their pleadings, plaintiffs must include the time, place, and nature

of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to

satisfy this requirement.  Id. at 1548 (quoting Moore v. Kayport Package Express,

Inc., 885 F.2d 531, 540 (9th Cir. 1989)).  "[T]he circumstances constituting the

alleged fraud [must] 'be specific enough to give defendants notice of the particular

misconduct . . . so that they can defend against the charge and not just deny that

they have done anything wrong.'"  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124

(9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 10104, 1019 (9th Cir.

2001)); see also Moore, 885 F.2d at 540 (finding that Rule 9(b) requires a plaintiff

to attribute particular fraudulent statements or acts to individual defendants).

However, "[m]alice, intent, knowledge, and other conditions of a person's mind

may be alleged generally."  Fed. R. Civ. P. 9(b); see also In re GlenFed, Inc. Sec.

Litig., 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply

by saying that scienter existed."); Walling v. Beverly Enter., 476 F.2d 393, 397

(9th Cir. 1973) (finding that Rule 9(b) "only requires the identification of the

circumstances constituting fraud so that the defendant can prepare an adequate

answer from the allegations" (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim. <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) <u>overruled on other grounds by</u> <u>Davis v. Scherer</u>, 468 U.S. 183 (1984).

<u>DISCUSSION</u>

Moving Defendants contend that the First Amended Complaint is vague and conclusory and therefore should be dismissed for failure to comply with Federal Rules of Civil Procedure 8 and 12(b)(6). The Court agrees.

I.      <u>Plaintiff's New Claims</u>

As a preliminary matter, Defendants argue that Counts I, II, III, IV, VII, VIII, IX, XI, and XIII of the First Amended Complaint should be dismissed or stricken because the Court only granted leave to amend the claims asserted in the original Complaint. (MTD at 6–7; Reply at 1–2.)

This contention is belied by the terms of the December 13, 2010 Order, which provides as follows:

> The Court recognizes that it may be possible for Plaintiff to state a claim if provided the opportunity to amend his Complaint. Accordingly, the Complaint is DISMISSED as against all Defendants in this action with leave to amend no later than 30 days from the filing of this Order, except for Plaintiff's TILA rescission and recoupment claims, which are barred as a matter of law. . . . Failure to do so and to cure the pleading deficiencies will result in dismissal of this action with prejudice. Plaintiff is advised that the amended complaint must clearly state how each of the named defendants have injured him, and it must also clearly identify the statutory provisions under which Plaintiff's claims are brought.

(Order at 30–31.) In the Order, the Court did not circumscribe which claims could be amended, aside from Plaintiff's TILA rescission and recoupment claims, and did not preclude Plaintiff from raising new claims. The Court will not now strike Counts I, II, III, IV, VII, VIII, IX, XI, and XIII of Plaintiff's First Amended Complaint solely because they were not included in the original Complaint. Defendants' argument on this point is inapposite.

## II.    Count I: Violation of the Sherman Antitrust Act

Plaintiff alleges that Defendants "engaged in predatory conduct or anticompetitive conduct" by "monopolizing or attempting to monopolize the mortgage lending and servicing market" in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. (FAC ¶¶ 73–74, 79.) Plaintiff seeks monetary relief for this violation, presumably pursuant to Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15.

Section 2 of the Sherman Act makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. Monopolization and attempted monopolization are the two traditional claims asserted under Section 2. To state a claim for monopolization, the plaintiff must sufficiently allege: "'(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" John Doe 1 v. Abbott Labs., 571 F.3d 930, 933 n.3 (9th Cir. 2009) (quoting Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 481 (1992)); Alaska Airlines v. United Airlines, Inc., 948 F.2d 536, 540–41 (9th Cir. 1991) (same); see also MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124, 1130 (9th Cir. 2004) (listing the elements of a monopolization claim).

To state a claim for attempted monopolization, the plaintiff must allege: "'(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" Cascade Health Solutions v. PeaceHealth, 515 F.3d

883, 893 (9th Cir. 2008) (quoting Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993)); see also VeriSign, 611 F.3d at 506 (same).

An antitrust plaintiff must also demonstrate that the injury in question is "injury of the type the antitrust laws were intended to prevent."[3] Brunswick, 429 U.S. at 489. Indeed, the antitrust laws "were enacted for 'the protection of competition, not competitors.'" Id. at 488 (quoting Brown, 370 U.S. at 320); see also Cascade Health Solutions, 515 F.3d at 501–02 (recognizing the Supreme Court's "long and consistent adherence to the principle that the antitrust laws protect the process of competition, and not the pursuits of any particular competitor").

A plaintiff seeking damages pursuant to Section 4 of the Clayton Act must show causal antitrust injury, and to obtain injunctive relief pursuant to

---

[3] This is different from antitrust standing. See Cargill, Inc. v. Monfort of Colo., Inc., 479 U.S. 104, 110–11 nn. 5–6 (1986) (noting that antitrust injury is necessary, but not always sufficient, to establish standing under Section 4 and that the standing analysis under Section 16 may differ from that for Section 4); see also Associated Gen. Contractors of Cal., Inc. v. Cal. State Counsel of Carpenters, 459 U.S. 519, 535–46 (1983) (articulating factors that courts should consider when determining whether a plaintiff has standing under Section 4); Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc., 140 F.3d 1228, 1232–37 (9th Cir. 1998) (examining whether a plaintiff had standing to assert claims for damages and injunctive relief under Sections 4 and 16 of the Clayton Act); Amarel v. Connell, 102 F.3d 1494, 1506–07 (9th Cir. 1996) (summarizing the factors relevant to determine whether a plaintiff has standing to pursue a damages claim under Section 4).

Section 16 of the Clayton Act, a plaintiff must allege threatened antitrust injury.[4]

Cargill, 479 U.S. at 109–13. The purpose of the antitrust injury requirement is to

"ensure[] that the harm claimed by the plaintiff corresponds to the rationale for

finding a violation of the antitrust laws in the first place, and it prevents losses that

stem from competition from supporting suits by private plaintiffs for either

damages or equitable relief." Atlantic Richfield Co. v. USA Petroleum, Inc., 495

U.S. 328, 342 (1990). As such, "[t]o show antitrust injury, a plaintiff must prove

that his loss flows from an anticompetitive aspect or effect of the defendant's

behavior [because] it is inimical to the antitrust laws to award damages for losses

stemming from acts that do not hurt competition." Rebel Oil Co., Inc. v. Atlantic

Richfield Co., 51 F.3d 1421, 1433 (9th Cir. 1995) (citing Atlantic Richfield, 495

U.S. at 334); see also Cascade Health Solutions, 515 F.3d at 902 ("'Plaintiffs must

prove antitrust injury, which is to say injury of the type the antitrust laws were

intended to prevent and that flows from that which makes defendants' acts

unlawful. The injury should reflect the anticompetitive effect either of the

---

[4] Section 4 of the Clayton Act provides treble damages to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. Section 16 of the Clayton Act provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26.

violation or of anticompetitive acts made possible by the violation.'") (quoting Brunswick, 429 U.S. at 489).

In addition to antitrust injury, antitrust plaintiffs must also properly allege a relevant market. See Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1044 (9th Cir. 2008) (finding that to state a claim under either Section 1 or Section 2 of the Sherman Act, the plaintiff must sufficiently allege a relevant market). The Ninth Circuit recently addressed the legal principles that govern definition of a relevant market, and it reaffirmed that a complaint may be dismissed under Rule 12(b)(6) if its relevant market definition is "facially unsustainable." Id. at 1045 (citing Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436–37 (3d Cir. 1997)). The relevant market includes both the product market and the geographic market. Brown Shoe, 370 U.S. at 324; Newcal Indus., 513 F.3d at 1045 n.4. As to the product market, it must "encompass the product at issue as well as all economic substitutes for the product." Newcal Indus., 513 F.3d at 1045 (citing Brown Shoe, 370 U.S. at 325). It must therefore include "the group of sellers or producers who have the 'actual or potential ability to deprive each other of significant levels of business.'" Forsyth v. Humana, Inc., 114 F.3d 1467, 1476 (9th Cir. 1997) (quoting Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc., 875 F.2d 1369, 1374 (9th Cir. 1989)); see also Brown Shoe, 370 U.S. at 325 ("The outer

boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.").  "In limited settings, however, the relevant product market may be narrowed beyond the boundaries of physical interchangeability and cross-price elasticity to account for identifiable submarkets or product clusters."  Thurman Indus., 875 F.2d at 1374 (citation omitted).  To establish the existence of a legally cognizable submarket, "the plaintiff must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market."  Newcal Indus., 513 F.3d at 1045; see also Brown Shoe, 370 U.S. at 325 (listing several "practical indicia" of an economically distinct submarket).

Here, contrary to the abundant weight of authority, Plaintiff devoted merely five words of its fifty-one page complaint to defining the relevant market. Plaintiff asserts that the relevant market is the "mortgage lending and servicing market" (FAC ¶ 74), but the complaint is utterly devoid of any explanation or elaboration to support this contention.  For instance, the complaint does not contain any allegations concerning economic substitutes for the proposed product market, and it is entirely unclear to the Court why Plaintiff defined the relevant market in

the way that it did.  Moreover, the complaint does not even specify a relevant geographic market.

The Court is also concerned by the vagueness of Plaintiff's allegations in support of the antitrust claim.  As noted, Plaintiff alleges that "Defendants have engaged in predatory conduct or anticompetitive conduct in an attempt to monopolize the mortgage lending and servicing market."  (FAC ¶ 74.)  The complaint, however, utterly fails to set forth any specific factual or legal allegations or to link those allegations to particular statutory violations.  Instead, Plaintiff alleges that Defendants "worked to create the collapse of the mortgage market, which in turn created an economic collapse unprecedented since the Great Depression."  (FAC ¶ 77.)  Such sweeping statements fail to apprise Defendants of their alleged wrongdoings.

The Supreme Court acknowledged, in a case involving an alleged Sherman Act violation, that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  <u>Associated Gen. Contractors</u>, 459 U.S. at 528 n.17; <u>see also</u> <u>Twombly</u>, 550 U.S. at 558 ("[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery . . . , but quite another to forget that proceeding to antitrust discovery can be expensive."); <u>Kendall</u>, 518 F.3d at

1046–47 (concluding that the Supreme Court clarified the Sherman Act pleading requirements in <u>Twombly</u> "because discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case") (citing <u>Twombly</u>, 550 U.S. at 558–59). Because Plaintiff has provided nothing more than legal conclusions in support of the antitrust claim, this claim must be dismissed.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to Count I of the First Amended Complaint.

III.    <u>Count II: Violations of the Hawaii Antitrust/Anti-Monopoly Acts</u>

In Count II of the First Amended Complaint, Plaintiff relies on the factual allegations contained in Count I to assert violations of state antitrust laws. Plaintiff states generally that "[m]ortgage lending and servicing in Hawaii is an activity in or affecting interstate commerce." (FAC ¶ 81.) Plaintiff then alleges that Defendants have violated "the Hawaii Anti-Trust Act, Hawaii Revised Statutes § 480-13, and the Hawaii Monopolization Act, Hawaii Revised Statutes § 480-9." (FAC ¶ 82.)

The close relationship between federal antitrust law and Hawaii antitrust law has been long established. <u>See, e.g.</u>, <u>Robert's Haw. Sch. Bus v. Laupahoehoe Transp. Co., Inc.</u>, 982 P.2d 853, 881 n.29 (Haw. 1999) (noting the

17

similarities between Section 2 of the Sherman Act and Hawaii Revised Statute section 480-9.)  Indeed, the "[l]egislative history of Hawaii's antitrust law clearly indicates that the state laws are to be interpreted and construed in harmony with analogous federal antitrust laws."  Island Tobacco Co., Ltd. v. R. J. Reynolds Indus., Inc., 513 F. Supp. 726, 738 (D. Haw. 1981).  Similar to federal law, therefore, Hawaii courts require plaintiffs in antitrust proceedings to plead the "nature of the competition" to "ensure that the injury results from a competition-reducing aspect of the defendant's behavior."  Davis v. Four Seasons Hotel Ltd., 228 P.3d 303, 325 (Haw. 2010) (citing and relying on federal law).

        As with Plaintiff's Sherman Act claim, Plaintiff's state antitrust claim is vague and conclusory and fails to set forth sufficient factual allegations to withstand a motion to dismiss.  Broad assertions of state antitrust law violations of the type presented here simply do not give Defendants an opportunity to properly defend themselves.  See Iqbal, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.").  Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to Count II of the First Amended Complaint.

IV.    Count III: Civil Conspiracy

Count III alleges that "Defendants BAC, as successor in interest to First Magnus, MERS, as mortgagee, and the DOE Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act . . . and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiff."  (FAC ¶ 85.)  According to Plaintiff, Defendants had a "common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiff."  (Id. ¶ 86.)

This Count is dismissed because Hawaii does not recognize an independent cause of action for "civil conspiracy"—such theories of potential liability are derivative of other wrongs.  See, e.g., Chung v. McCabe Hamilton & Renny Co., 128 P.3d 833, 843 (Haw. 2006); Weinberg v. Mauch, 890 P.2d 277, 286 (Haw. 1995).  Here, in contravention of this principle, Plaintiff did not link the claim of civil conspiracy with another cause of action.[5]  Further, to the extent that this count is premised at least in part on fraud, Plaintiff must meet the heightened pleading requirements of Rule 9(b) in alleging a conspiracy.  See Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) ("Rule 9(b) imposes heightened pleading

[5] Plaintiff acknowledges as much in the Opposition.  (See Opp'n at 23 (recognizing that "Plaintiff may not have tied his claim of civil conspiracy to any particular cause of action").)

requirements where the object of the conspiracy is fraudulent." (citation and internal quotations omitted)).  The bald assertions contained in this claim do not satisfy Rule 9(b)'s pleading standard.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to Count III of the First Amended Complaint.

V.    Count IV: Fraudulent Misrepresentation

Plaintiff next alleges that Defendants "knowingly and intentionally concealed material information from Plaintiff which was required by federal statutes and regulations to be disclosed to the Plaintiff both before and at the time of closing."  (FAC ¶ 90.)  Plaintiff also asserts that Defendants "materially misrepresented or failed to disclose material information to the Plaintiff with full knowledge by defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made or were omissions of material fact."  (Id. ¶ 91.)

Plaintiff's vague assertions are insufficient to satisfy Rule 9(b)'s rigorous pleading requirements, which apply to allegations of fraud or mistake. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  As noted, a plaintiff "must state the time, place, and specific content of the false

representations as well as the identities of the parties to the misrepresentation." Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1393 (9th Cir. 1988).  Fraud allegations must also include the "who, what, when, where, and how" of the misconduct, and set forth "more than the neutral facts necessary to identify the transaction."  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).

Here, with the exception of Paragraph 92, the allegations of misconduct related to this claim are overly broad and general in nature.  These assertions do not distinguish between Defendants and are plainly insufficient to meet Plaintiff's burden under Rule 8, much less the more rigorous requirements of Rule 9(b) applicable here.

Paragraph 92, the lone paragraph that provides any clarity to the fraudulent misrepresentation claim, is similarly deficient.  In this paragraph, Plaintiff alleges several instances of concealment and misrepresentation, but the complaint does not identify who specifically made these misrepresentations or how material facts were concealed from Plaintiff.  Nor does Plaintiff specify how these

representations were false.[6]  Without more, the Court cannot conclude that

Plaintiff's vague assertions satisfy Rule 9(b)'s heightened pleading requirement.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss as

to Count IV of the First Amended Complaint.

VI.    Count V: Unfair and Deceptive Acts or Practices

Plaintiff also contends that Defendants have engaged in unfair or

deceptive acts and practices in violation of Hawaii Revised Statute sections 480-

2(a) and 481A-3.  (FAC ¶¶ 97–109.)

Section 480-2(a) provides that "[u]nfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce are

unlawful."  Haw. Rev. Stat. § 480-2(a).  "Two distinct causes of action have

emerged under [section] 480-2(a): (1) claims alleging unfair methods of

competition; and (2) claims alleging unfair or deceptive acts or practices."[7]  Haw.

_____

[6] As to Plaintiff's claim that Defendants "[f]alsely represented on August 4, 2009, that First Magnus transferred its interest in the Mortgage to BAC" (FAC ¶ 92(j)), this contention also fails to meet Rule 9(b)'s requirement that fraud be pleaded with particularity.  In this allegation, Plaintiff is presumably referring to the assignment from MERS to BAC (see id. Ex. A; Opp'n at 19–21), but the complaint is completely devoid of any factual allegations to support Plaintiff's argument that MERS did not have authority to assign the mortgage.  Accordingly, this contention cannot withstand a motion to dismiss.

[7] Although "[a]ny person" may bring an action for unfair methods of
(continued...)

22

Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 148 P.3d 1179, 1207 (Haw. 2006); see also Star Markets, Ltd. v. Texaco, Inc., 945 F. Supp. 1344, 1346 (D. Haw. 1996). Section 481A-3 similarly prohibits "deceptive trade practice[s]." Haw. Rev. Stat. § 481A-3.

Plaintiff contends that Defendants violated these statutes by: (1) targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products; (2) failing to adequately disclose the true costs and risks of the subject loan and its inappropriateness for Plaintiff; (3) failing to disclose that the lender approved the subject loan based on financial documents required by Defendants such as tax returns and pay stubs without regard to Plaintiff's ability to sustain the loan with any reasonable means test; (4) falsely representing or failing to fully and completely disclose the amounts Plaintiff was required to pay; (5) issuing a defective mortgage loan that resulted in little net

---

[7](...continued)
competition in violation of section 480-2, only consumers, the attorney general, or the director of the office of consumer protection may bring an action for unfair or deceptive acts or practices in violation of section 480-2. Haw. Rev. Stat. § 480-2(d), (e); see also Davis v. Four Seasons Hotel, Ltd., 228 P.3d 303, 307 (Haw. 2010). A "consumer" is a "natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." Haw. Rev. Stat. § 480-1.

benefit to Plaintiff with the primary objective of generating fees; and (6) entering into the public record a materially false document.  (FAC ¶ 102.)

Once again, Plaintiff provides only labels and conclusions to support this claim.  For instance, Plaintiff has utterly failed to allege any facts to suggest that Defendants were targeting financially unsophisticated or otherwise vulnerable consumers.  Nor has Plaintiff proffered facts with respect to Defendants' failure to adequately disclose "the true costs and risks of the subject loan."  There are also no factual allegations to suggest that the lender failed to disclose that it approved loans "without regard to Plaintiff [sic] ability to sustain the loan with any reasonable means test."  (Id.)  Moreover, Plaintiff's assertion that Defendants created a defective mortgage loan that resulted in little net economic benefit to Plaintiff is so utterly lacking in factual basis that it cannot possibly satisfy federal pleading requirements.

Additionally, Plaintiff's contentions that Defendants falsely represented the amount Plaintiff was required to pay, and that Defendants caused to be recorded a materially false document purporting to convey an interest in the Subject Property, sound in fraud.  These assertions, couched as legal conclusions, are insufficient to meet Plaintiff's burden under Rule 8, much less the more rigorous requirements of Rule 9(b) that apply to allegations of fraud or mistake.

See Fed. R. Civ. P. 9(b) (requiring a party to state with particularity the circumstances constituting fraud or mistake).

In sum, the instant claim consists entirely of conclusory allegations and vague assertions, which do not satisfy federal pleading requirements and are insufficient to put Defendants on notice of the basis for Plaintiff's claims. See Iqbal, 129 S. Ct. at 1949 (finding that a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement") (citation and quotation signals omitted). Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to Count V of the First Amended Complaint.

## VII.  Count VI: Breach of Fiduciary Duty

Plaintiff also argues that his relationship with Defendants was fiduciary in nature and that Defendants breached their fiduciary duties in connection with the loan. (See FAC ¶¶ 110–118.) Generally, there exists no fiduciary duty between borrowers and lenders. Unless a special relationship exists between a borrower and lender that elevates the lender's responsibility, the standard "arms-length business relationship" applies. Giles v. General Motors Acceptance Corp., 494 F.3d 865, 883 (9th Cir. 2007); see also Pension Trust Fund for Operation Engineers v. Federal Ins. Co., 307 F.3d 944, 954 (9th Cir. 2002).

Here, the complaint is completely devoid of any allegations to suggest that Plaintiff's relationship with Defendants is anything other than an ordinary, arms-length, lender-borrower relationship. Plaintiff's unsubstantiated assertion that Defendants owe him a fiduciary duty is simply not sufficient to establish the existence of such a duty.[8] Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to Count VI of the First Amended Complaint.

VIII. Count IX: Unconscionability

Plaintiff argues in Count IX that "the terms and conditions of the Note and Mortgage are unconscionable, and Plaintiff is entitled to rescission, damages, repayment, reimbursement or indemnification of all monies that were paid and other claims in such amounts as shall be proven at the time of trial." (FAC ¶ 135.)

"Unconscionability" is generally a defense to the enforcement of a contract, and is not a proper claim for affirmative relief. See, e.g., Carey v. Lincoln Loan Co., 125 P.3d 814, 829 (Or. App. 2005) ("[U]nconscionability is not

_____

[8] Additionally, to the extent that Plaintiff asserts Defendants breached their purported fiduciary duties by engaging in fraudulent conduct, those allegations fail to satisfy Rule 9(b)'s heightened pleading requirement. Moreover, the Court will not accept Plaintiff's invitation to "recognize that the law is changing with regard to lenders' fiduciary duties and find that Plaintiff has stated a cause of action for breach of fiduciary duty." (See Opp'n at 26.) Plaintiff's argument on this point is premised solely upon California state law, which simply is not relevant to the instant action. (See id. at 24–26.)

a basis for a separate claim for relief.")  To the extent that unconscionability can be addressed affirmatively as a part of a distinct cause of action, such a claim exists where "the <u>clauses</u> are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract."  <u>Lews v. Lewin</u>, 748 P.2d 1362, 1366 (Haw. 1988) (emphasis added and citations omitted).

Here, Plaintiff's allegations fail to address any specific contract terms between Plaintiff and Defendants, and instead, address Defendants' alleged conduct generally.  To the extent Plaintiff refers to the contract, it is to state that "First Magnus did not explain to [Plaintiff] that the payments on the Note he signed would for 10 years pay only interest on the loan, and that he would build no equity in the Subject Property as the result of those payments."  (FAC ¶ 133.) Even this allegation, however, does not allege that any particular contract terms are unconscionable; to the contrary, Plaintiff asserts that First Magnus failed to inform him of the contract terms.  Moreover, this claim is completely devoid of any facts to demonstrate unconscionability.  Plaintiff's contentions in Count IX therefore fail to state a claim.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to Count IX of the First Amended Complaint.

IX.    Count X: Intentional Infliction of Emotional Distress

        Plaintiff next asserts a cause of action for intentional infliction of
emotional distress.  Plaintiff specifically contends that he "suffered emotional
distress in the form of lost sleep, constant worry, and grief from the loss of his
property."  (FAC ¶ 139.)

        "Under Hawaii law, the elements of IIED are '(1) that the act
allegedly causing the harm was intentional or reckless, (2) that the act was
outrageous, and (3) that the act caused (4) extreme emotional distress to another.'"
Enoka v. AIG Haw. Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (quoting Hac v.
Univ. of Haw., 73 P.3d 46, 60–61 (Haw. 2003)).  The Hawaii Supreme Court
defines the term "outrageous" as conduct "'without just cause or excuse and
beyond all bounds of decency.'"  Enoka, 128 P.3d at 872 (quoting Lee v. Aiu, 936
P.2d 655, 670 n.12 (Haw. 1997)).  "Moreover, 'extreme emotional distress'
constitutes, inter alia, mental suffering, mental anguish, nervous shock, and other
'highly unpleasant mental reactions.'"  Id. (quoting Hac, 73 P.3d at 60).

        Here, Plaintiff fails to allege any facts to support an inference that
Defendants acted in an intentional or reckless manner or that they engaged in
outrageous conduct or caused him to suffer severe mental and emotional distress.
Plaintiff's conclusory allegations are once again insufficient to state a claim for

relief.  See Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to Count X of the First Amended Complaint.

X.    Remaining Claims and Leave to Amend

Plaintiff concedes that the causes of action for Unjust Enrichment (Count VII), Mistake (Count VIII), Violations of the Fair Debt Collection Practices Act (Count XI), Breach of the Covenant of Good Faith and Fair Dealing (Count XII), and Complaint to Quiet Title (Count XIII) "are unlikely to prevail as written."  (Opp'n at 28–29.)  Plaintiff therefore requests leave to amend these claims and any others that the Court finds to be deficient.

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires."  Further, "requests for leave should be granted with extreme liberality."  Moss v. U.S. Secret Service, 572 F.3d 962, 792 (9th Cir. 2009).  "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment."  Id.  "However, 'liberality in granting leave to amend is subject to several limitations.'"  Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)).  "Those

limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." Id. (citing Ascon Props, 866 F.2d at 1160). "Further, '[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'" Id. (quoting Ascon Props, 866 F.2d at 1160).

Due to the deferential standard for amended complaints in this Circuit, the Court will provide Plaintiff one further opportunity to amend the complaint consistent with both this Order as well as the Court's December 13, 2010 Order. Accordingly, the First Amended Complaint is DISMISSED WITHOUT PREJUDICE as against all Defendants in this action with leave to amend no later than 30 days from the filing of this Order. Failure to file an amended complaint and to cure the pleading deficiencies will result in dismissal of this action with prejudice. Plaintiff is advised that the amended complaint must clearly state how each of the named defendants have injured him, and it must also clearly identify the statutory provisions, if any, under which Plaintiff's claims are brought. Moreover, the Court does not here limit Plaintiff's amended pleading only to the causes of action presently contained in the complaint—Plaintiff may allege new theories of liability, provided that they are supported by the proper factual and legal basis.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS IN PART and

DENIES IN PART the Motion to Dismiss.  The First Amended Complaint is

DISMISSED WITHOUT PREJUDICE as against all Defendants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 13, 2011.


_____
David Alan Ezra
United States District Judge


<u>Phillips v. BAC Home Loans Servicing, LP et al.</u>, Cv. No. 10-00272 DAE-RLP
ORDER: (1) GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS; (2) DISMISSING COMPLAINT WITHOUT PREJUDICE AS
AGAINST ALL DEFENDANTS